UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| JOCA-ROCA REAL ESTATE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:13-cv-00064-JAW |
| | ) | |
| ROBERT T. BRENNAN, JR., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

Joca-Roca Real Estate, LLC (Joca-Roca) purchased property from Robert Brennan under an asset purchase agreement. Years after the closing, Joca-Roca learned that the state of Maine Fire Marshal required that the building on the property be equipped with sprinklers. Joca-Roca brought an action against Mr. Brennan alleging fraud and breach of contract, and seeking compensation for costs it incurred to install an automatic sprinkler system in the building. Mr. Brennan now moves the Court for summary judgment based on insufficient evidence and statute of limitations grounds. The Court concludes that Mr. Brennan is entitled to summary judgment on Joca-Roca's breach of contract claim based on the six-year statute of limitations, but it also concludes that Joca-Roca's fraud claim survives the motion.

## I.   BACKGROUND

### A.   Procedural History

On March 4, 2013, Joca-Roca filed a two-count complaint against Mr. Brennan, alleging both fraud and breach of contract. *Compl.* (ECF No. 1). Mr. Brennan moved

for summary judgment on March 2, 2015.[1]  *Def.'s Mot. for Summ. J.* (ECF No. 71) (*Def.'s Mot.*).  Mr. Brennan filed with his motion a statement of material facts.  *Def.'s Statement of Material Facts* (ECF No. 69) (DSMF).  The parties also agreed to six stipulations pursuant to District of Maine Local Rule 56(b).  *Stipulated Statement of Material Facts* (ECF No. 70) (SSMF).

Joca-Roca opposed Mr. Brennan's motion on April 1, 2015.  *Opp'n to Def.'s Mot. for Summ. J.* (ECF No. 74) (*Pl.'s Opp'n*).  Joca-Roca also filed a reply to Mr. Brennan's statement of material facts, *Opposing Statement of Material Facts and Pl.'s Additional Facts,* at 1-2 (ECF No. 75) (PRDSMF), and its own statement of additional material facts, *id.* at 2-7 (PSAMF).  Mr. Brennan replied to Joca-Roca's opposition on April 15, 2015, *Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. for Summ. J.* (ECF No. 79) (*Def.'s Reply*), and also replied to its statement of additional material facts.  *Def.'s Reply Statement of Material Facts* (ECF No. 78) (DRPSAMF).

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and the parties are citizens of different states.  28 U.S.C. § 1332(a)(1).

**B.    Statement of Summary Judgment Facts[2]**

**1.    Construction and Sale of Main Facility**

---

[1]    To complete the procedural history, this case has already traveled to the First Circuit and back.  *See Joca-Roca Real Estate, LLC v. Brennan*, 772 F.3d 945 (1st Cir. 2014).  After filing suit, after extensive discovery, and after the discovery deadline had closed, Joca-Roca moved to stay the matter to allow for arbitration.  *Id.* at 947.  On December 1, 2014, the First Circuit affirmed this Court's ruling that Joca-Roca waived arbitration by failing to timely assert it.  *Id.* at 951.

[2]    Keeping with "the conventional summary judgment praxis," the Court recounts the facts in the light most hospitable to Joca-Roca's case theories consistent with record support.  *Gillen v. Fallon Ambulance Serv., Inc.*, 283 F.3d 11, 17 (1st Cir. 2002).  In compliance with this obligation, the Court recites supported facts as true even if Mr. Brennan disputes them.

Joca-Roca seeks to recover from Mr. Brennan those damages defined in the Asset Purchase Agreement[3] (the Agreement) section regarding indemnity that Joca-Roca alleges it incurred within the last two and a half years to remedy code noncompliance issues arising from the fact that a building it purchased from Mr. Brennan was not equipped with a sprinkler system.  SSMF ¶ 6.

On September 18, 2005, Mr. Brennan entered into an agreement to convey to Joca-Roca his boat, car, and RV dealership facility (the Main Facility) in Lebanon, Maine, along with the underlying real estate and other improvements, including a separate boat storage building.  SSMF ¶ 3. On December 8, 2005, the sale closed. SSMF ¶ 1; PSAMF ¶ 15; DRPSAMF ¶ 15.  The Main Facility is a 32,000 square-foot building that is used in part as a showroom.[4]  PSAMF ¶ 16; DRPSAMF ¶ 16.

In 2003, Mr. Brennan signed an application for a construction permit with the state fire marshal's office for a boat storage building in Lebanon, Maine.[5]  PSAMF ¶ 7; DRPSAMF ¶ 7.   Mr. Brennan made the following decisions regarding the

---

[3]   *See Compl.* Attach. 1 *Asset Purchase Agreement* (ECF No. 1) (*Agreement*).

[4]   Joca-Roca's paragraph 14 states:  "Brennan doubts that he disclosed to Joca-Roca that the application for the public water supply was still outstanding at the time of the closing."  PSMF ¶ 14. Mr. Brennan denied paragraph 14 because the "record evidence cited states **the approval is dated November 2, 2005.  The closing was on December 8, 2005.**"  DRPSAMF ¶ 14 (emphasis in DRPSAMF).

To support paragraph 14, Joca-Roca cited portions of the Brennan deposition.  PSMF ¶ 14 (citing *Brennan Dep.* 20-21:21:3 (Attach. 1)).  The cited portion of the Brennan deposition relates to whether Mr. Brennan told Joca-Roca about the application for the public water supply as of the date of the Agreement, not the date of the closing.  Furthermore, the portion of the Brennan deposition cited by Mr. Brennan confirms that he obtained approval for the public water supply application on November 2, 2005, more than a month before the December 8, 2005 closing.  Accordingly, Joca-Roca has failed to support paragraph 14 with a citation to probative record evidence and the Court has struck Joca-Roca's paragraph 14.

[5]   Mr. Brennan interposed a qualified response to Joca-Roca's paragraph 7, asserting that the boat storage building to which the construction permit relates is a different building from the Main Facility, which is the subject of Joca-Roca's Complaint.  DRPSAMF ¶ 7.  The Court reviewed Mr. Brennan's record support for his qualification and finds that the citation does not support the qualification.  The Court has deemed Plaintiff's paragraph 7 as admitted without qualification.

information on the construction application: (1) to check the box indicating that there would not be a sprinkler system in the boat storage building; (2) to indicate the Occupancy Classification of the boat storage building as a "Business"; and, (3) to indicate that the building was an "Unprotected Non-Combustible: Type II (000)" construction type. PSAMF ¶¶ 9-11; DRPSAMF ¶¶ 9-11. An employee completed the remainder of the construction application at Mr. Brennan's direction. PSAMF ¶ 8; DRPSAMF ¶ 8. Mr. Brennan conceded that there was no one else at the company who could have directed this employee regarding the construction application, and that he must have done so himself. PSAMF ¶ 12; DRPSAMF ¶ 12. Mr. Brennan oversaw the construction of the facility, which was built and finished in 2003. SSMF ¶ 2.

Town of Lebanon Fire Chief Blaine H. Wood was present during the construction of the Main Facility in 2003 and suggested to Mr. Brennan that a fire sprinkler system would be "nice" and he "ought to have them because of the size of the building." DSMF ¶ 1; PRDSMF ¶ 1; PSAMF ¶ 13; DRPSAMF ¶ 13.[6] Chief Wood did not tell Mr. Brennan in 2003 that sprinklers were required because he did not know until much later that the State was issuing permits and requiring sprinklers in some commercial buildings.[7] DSMF ¶ 1; PRDSMF ¶ 1. In his conversations with

---

[6]    The "nice" statement is found in the Defendant's paragraph one. DSMF ¶ 1. Joca-Roca interposed a qualified response, adding that Chief Wood also testified that he told Mr. Brennan that he "ought to have [sprinklers] because of the size of the building." PRDSMF ¶ 1. The "ought to have" language appears in Joca-Roca's paragraph 13. PSAMF ¶ 13. Mr. Brennan interposed a qualified response, asserting that the Chief told Mr. Brennan that he "probably ought to contact" the State Fire Marshal. DRPSAMF ¶ 13. The Court reviewed the cited portions of the record and overrules both qualified responses.
[7]    Mr. Brennan's paragraph one reads in relevant part: Chief Wood "never told Brennan that a fire sprinkler was required by any local or state code because he was not aware of any such

Mr. Brennan "maybe years later," Chief Wood told Mr. Brennan that he "probably ought" to contact the state fire marshal's office because it was in charge of sprinklers.[8] PSAMF ¶ 13; DRPSAMF ¶ 13.

On August 23, 2013, Chief Wood signed an affidavit stating that he "noted to Mr. Brennan that he may need to have the building equipped with a sprinkler system for fire safety, and should consult with the State Fire Marshal's office"; however, although Chief Wood could not remember exactly what he said to Mr. Brennan in 2003, he clarified at his deposition a month later that: (1) he did not prepare that affidavit, (2) he never told Mr. Brennan that he may need to install sprinklers, and (3) he never told Mr. Brennan to check with the state fire marshal's office.[9] DSMF ¶ 2; PRDSMF ¶ 2.

### 2.  Land Use Opinion Letter and Occupancy Permit

---

[7] requirement." DSMF ¶ 1. Joca-Roca interposed a qualified objection, noting that Chief Wood testified that he "never knew until much later that the State was to be issuing permits and they were requiring sprinklers in commercial buildings." PRDSMF ¶ 1. The Court reviewed the cited portion of Chief Wood's testimony and agrees with Joca-Roca that, although Chief Wood's testimony supports the proposition that he did not inform Mr. Brennan about the sprinkler requirement in 2003, it does not support Mr. Brennan's further assertion that Chief Wood "never" told Mr. Brennan that a sprinkler was required by a local or state code. The Court revised Mr. Brennan's paragraph one to conform to the cited record.

[8] This portion of Joca-Roca's paragraph thirteen reads: "Lebanon Fire Chief Blaine H. Wood testified that in his conversations with Brennan over the years he indicated that Brennan should consult with the State Fire Marshal's office because the State Fire Marshal is in charge of sprinklers." PSAMF ¶ 13. Mr. Brennan interposed a qualified response to Joca-Roca's paragraph thirteen, clarifying that Chief Wood testified that the Chief said that he told Mr. Brennan that he "probably ought to contact" the state fire marshal and that those statements were made "years later," after the Main Facility has been completed. DRPSAMF ¶ 13. After reviewing the cited testimony from Chief Wood, the Court amended Joca-Roca's paragraph thirteen to conform to Chief Wood's actual deposition testimony.

[9] Joca-Roca interposed a qualified response to Mr. Brennan's paragraph 2 because Chief Wood testified that he did not know exactly what he said to Mr. Brennan in 2003, and he indicated in his conversations with Mr. Brennan over the years that he should consult with the state fire marshal's office because the state fire marshal is in charge of sprinklers. PRDSMF ¶ 2. The Court addressed those issues in the preceding footnotes.

On or about January 17, 2006 (about a month after the closing), Robert S. Hark, Esquire, counsel for Joca-Roca, issued a land use opinion (the Opinion Letter) of the property to T.D. Banknorth, N.A. (TD Bank) in which he noted that: (1) the land uses did not contravene any zoning provision of municipal ordinances, regulations or by-laws, as there was no general zoning ordinance in Lebanon; (2) there was no evidence of any code violations under the town's building code; (3) the Maine Department of Environmental Protection (DEP) considered the property to be in compliance with their permitting regime; and (4) an occupancy permit was missing for the Main Facility.[10]  DSMF ¶ 3; PRDSMF ¶ 3.  Mr. Hark limited the Opinion Letter to the real estate's compliance with state and municipal zoning and land use matters discussed in the letter, and noted that other laws and regulations may be applicable to the property.  PSAMF ¶ 35; DRPSAMF ¶ 35.

On February 13, 2006, Mr. Brennan obtained a Certificate of Occupancy (the Certificate) for the Main Facility, which limited the use to a "Metal Storage Building."[11]  PSAMF ¶ 17; DRPSAMF ¶ 17.  As stated in the engineer's letter

---

[10]     Joca-Roca interposed a qualified response to Mr. Brennan's paragraph 3 because Mr. Hark's opinion letter also stated that "[b]ecause of the nature of the regulatory pattern which could possibly affect the Property and the use thereof, there may be other laws and regulations which are applicable to the Property, but this Land Use Opinion is limited to those State and municipal zoning and land use matters discussed below . . . ."  PRDSMF ¶ 3.  Moreover, Joca-Roca stated that the Opinion Letter gives "no opinion concerning . . . compliance of the Property with any laws, rules and regulations . . . except as may be specifically set forth in this opinion."  *Id.*  Further, Joca-Roca maintained that the Opinion Letter indicates that Mr. Hark only consulted the ordinances, building permits, and variance records of the Town of Lebanon, and certain records obtained from the DEP.  *Id.*

The Court reviewed the Opinion Letter, *see* DSMF Attach. 2 *Jan. 17, 2006 Letter to T.D. Banknorth, N.A.*, at PageID #: 232-34 (ECF No. 69-2), and concludes that it supports Joca-Roca's qualification.  Joca-Roca's paragraph 35, which Mr. Brennan admitted, reflects the limitation to the Opinion Letter set forth in Joca-Roca's qualified response to Mr. Brennan's paragraph three.  The Court modified that statement of fact accordingly.  *See* PSAMF ¶ 35.

[11]     Mr. Brennan denied Joca-Roca's paragraph 17 because the limiting condition in the Certificate was not intended to limit the use of the Main Facility, as there was no zoning in the Town of Lebanon

attached to the Certificate, the building was used for a showroom and offices when the Certificate was issued.  DSMF ¶ 5; PRDSMF ¶ 5.  The code enforcement officer (CEO) did not intend the "Metal Storage Building" limiting condition to limit the use of the Main Facility, as there was no zoning in Lebanon that would have limited the use.  DSMF ¶ 4; PRDSMF ¶ 4.  Whether the Main Facility complied with state fire code regulations and whether the building required fire sprinklers had nothing to do with the issuance of the Certificate for the Main Facility and the CEO made no

---

that limited the use.  PRDSMF ¶ 17.  His denial is identical to his affirmative statement in his paragraph 4.  *See* DSMF ¶ 4.  In support of his denial of Joca-Roca's paragraph 17, Mr. Brennan cites the declaration of Kathryn Newell, who was the building inspector and code enforcement officer for Lebanon, Maine and who issued the Certificate:

> 4. The limiting condition "METAL STORAGE BUILDING" contained on the Certificate of Occupancy was not intended to limit the use of the Main Facility as there was no zoning in the Town of Lebanon that would have applied to limit the use.  As stated on the engineer's letter attached to the Certificate, the building was used for a showroom and offices.

DSMF Attach. 3 *Decl. of Kathryn A. Newell*, ¶ 4 (ECF No. 69-3) (*Newell Decl.*).  Joca-Roca interposed a qualified response to Mr. Brennan's paragraph 4 because Ms. Newell further declared that she did not determine whether the building complied with state fire code regulations in issuing the Certificate.  PRDSMF ¶ 4.  Joca-Roca's qualification to Mr. Brennan's paragraph 4 is similar to Mr. Brennan's statement of fact in his own paragraph 6.  *Compare* DSMF ¶ 6 *with* PRDSMF ¶ 4.

The Court reviewed Ms. Newell's declaration and concludes that it supports Joca-Roca's paragraph 17, Mr. Brennan's qualification of Joca-Roca's paragraph 17, and Mr. Brennan's own paragraph 4.  The Court overrules Mr. Brennan's denial of Joca-Roca's paragraph 17 and admits it without modification.  However, the Court concludes that the declaration also supports Mr. Brennan's paragraph 4 and Joca-Roca's qualification thereof.  Accordingly, the Court modified Mr. Brennan's paragraph 4 to reflect Joca-Roca's qualification.  Additionally, because Joca-Roca's qualification of Mr. Brennan's paragraph 4 is included in Mr. Brennan's paragraph 6, the Court admits Mr. Brennan's paragraph 4 without modification.

Finally, Mr. Brennan interposed a qualified response to Joca-Roca's paragraph 17 because the record does not establish who obtained the Certificate after the closing and Joca-Roca's contention that Mr. Brennan obtained the Certificate is conjecture.  PSAMF ¶ 17.  The Court reviewed the Certificate and determined that it was issued to Stateline Auto.  *See* DSMF Attach. 3 *Department of Building Inspection Certificate of Occupancy, Lebanon, Maine*, at PageID #: 237 (ECF No. 69-3) (*Cert. of Occupancy*).  As Mr. Brennan testified, Stateline Auto was the entity that received approval for the public water supply.  *See Brennan Dep.* at 19:21-20:20.  Mr. Brennan admitted that he submitted that application, *see id.*; the Court concludes there is evidence in this record that permits characterizing Stateline Auto as Mr. Brennan for the purposes of this Order.  Viewing the evidence in the light most favorable to Joca-Roca, the Court concludes that the record supports its statement of fact and overrules Mr. Brennan's qualification of Joca-Roca's paragraph 17 on this issue.

determination as to whether the Main Facility complied with state fire code regulations in issuing the Certificate.[12]  DSMF ¶ 6; PRDSMF ¶ 6.

### 3.    Installation of Sprinkler System in Main Facility

The Main Facility has never had an automatic sprinkler system despite its use as a showroom under Mr. Brennan's ownership.  SSMF ¶ 4; PSAMF ¶ 20; DRPSAMF ¶ 20.  In January 2013, the state fire marshal's office informed Joca-Roca that the only building listed in their database was a storage facility, that the occupation of the Main Facility required a sprinkler system, and that the building was nonconforming as used.  PSAMF ¶¶ 18, 19; DRPSAMF ¶¶ 18, 19.  The state fire marshal's office threatened to close down the operations in the Main Facility if a sprinkler system was not installed.  PSAMF ¶ 21; DRPSAMF ¶ 21.

On June 7, 2013, Joca-Roca obtained a permit for the installation of a sprinkler system in the Main Facility.  PSAMF ¶ 24; DRPSAMF ¶ 24.

Joseph Alosa is an owner of both Joca-Roca and Profile State Line Superstore (Profile Superstore).  PSAMF ¶ 25; DRPSAMF ¶ 25.  Profile Superstore had a written lease agreement to occupy the real estate owned by Joca-Roca, but that lease probably expired and Profile Superstore and Joca-Roca now operate under an informal rental

---

[12]    Joca-Roca admitted that the CEO made no determination regarding compliance with the state fire code regulations in issuing the Certificate of Occupancy, but denied a portion of Mr. Brennan's paragraph 6 because the statement "whether the building required fire sprinklers had nothing to do with the issuance of the Certificate of Occupancy" is unsupported by the record; Joca-Roca moved to strike that portion of the statement of fact.  PRDSMF ¶ 6.

The Court overrules Joca-Roca's objection and admits the statement for two reasons.  First, motions to strike statements of fact are generally not allowed, but they may be used to remove a fact from the Court's consideration.  See D. ME. LOC. R. 56(e).  Second, the Court reviewed Ms. Newell's declaration and concludes that Mr. Brennan's entire statement of fact is supported by the record.

agreement.[13]  PSAMF ¶ 26; DRPSAMF ¶ 26.  Joca-Roca directed Profile Superstore

to install an automatic sprinkler system.[14]  PSAMF ¶ 27; DRPSAMF ¶ 27.  On June

7, 2013, Profile Superstore contracted with D.M. Burns Security, Inc. for the

---

[13]     Mr. Brennan interposed a qualified response to Joca-Roca's paragraph 26 because Profile Superstore had a written lease with Joca-Roca that began on December 8, 2005, with a termination date of December 31, 2011, and Profile Superstore continues to rent from Joca-Roca although the written lease technically expired.  DRPSAMF ¶ 26.
         In support of its statement of fact, Joca-Roca cited Mr. Alosa's declaration:

         5. Profile has a lease agreement to occupy the real estate owned by Joca-Roca.

PSAMF Attach. 3 *Decl. of Joseph Alosa*, ¶ 5 (ECF No. 75-3) (*Alosa Decl.*).   In support of his qualification, Mr. Brennan cited a copy of the lease, which shows an expiration date of December 31, 2011, *see* DRPSAMF Attach. 4 *Real Estate Lease* (ECF No. 78-4), and Mr. Alosa's deposition in which he testified:

         Q. There was a lease between Joca-Roca as landlord and Profile as tenant, correct?
         A. At the time, yeah.
         Q. And is that arrangement still in place?
         A. The arrangement is in place, but I don't know about the status of the lease.
         Q. All right.  Because the lease represent - - the original lease from the closing stated a term through 2011.  Are you aware of whether or not anything has been formally extended?
         A. I'm not aware, but I'm sure it's just expired.  We didn't - - one of those things fell through the cracks, I guess.
         Q. Okay. So your assumption is probably it's - - you're operating informally now.
         A. Right.

DRPSAMF Attach. 5 *Dep. of Joseph Alosa*, at 71:8-71:24 (ECF No. 78-5) (*Alosa Dep.*).
         The Court concludes that the record supports both Joca-Roca's statement and Mr. Brennan's qualification, and that the parties' statements do not conflict.  The Court modified Joca-Roca's paragraph 26 slightly to reflect that the written lease probably expired and that Profile Superstore and Joca-Roca now have an informal rental agreement.
[14]     Mr. Brennan denied Joca-Roca's paragraph 27 because Mr. Alosa directed David Roy, the general manager of Profile Superstore, to install an automated sprinkler system.  DRPSAMF ¶ 27.  In support of its statement, Joca-Roca cited the following portion of Mr. Alosa's declaration:

         7. Upon Joca-Roca's direction, Profile is installing an automatic sprinkler system in the Main Facility.

*Alosa Decl.* ¶ 7.  In support of his denial, Mr. Brennan cited Mr. Alosa's declaration that he is the owner of both Joca-Roca and Profile Superstore, *see id.* ¶¶ 1, 4, and David Roy's declaration that he "at the direction of Joseph Alosa, on behalf of Profile, executed an agreement with D.M. Burns Security, Inc. in June 2013 for the installation of a sprinkler system in the Main Facility . . . ." DRPSAMF Attach. 4 *Decl. of David Roy*, ¶ 4 (ECF No. 75-4) (*Roy Decl.*).
         First, Mr. Brennan is quibbling and his denial is frivolous.  Second, the record supports Joca-Roca's statement, and does not support a denial of that statement.  The Court overrules Mr. Brennan's objection and admits Joca-Roca's paragraph 27 as written.

installation of a sprinkler system.  PSAMF ¶ 28; DRPSAMF ¶ 28.  Profile Superstore entered into additional contracts for construction related to the sprinkler system, including an alarm, pumping system, and water storage facility.  PSAMF ¶ 29; DRPSAMF ¶ 29.  Joca-Roca credited Profile Superstore's rent to account for the full expense of installing the sprinkler system.  PSAMF ¶ 30; DRPSAMF ¶ 30.  The installation of the sprinkler is largely complete.  PSAMF ¶ 31; DRPSAMF ¶ 31.

Profile Superstore has expended no less than $195,359 towards retrofitting the Main Facility with a sprinkler system.  PSAMF ¶ 32; DRPSAMF ¶ 32.  The expenses related to the sprinkler system were incurred beginning in 2013.  PSAMF ¶ 33; DRPSAMF ¶ 33.  To date, Joca-Roca has credited Profile Superstore in excess of $150,000 in rent to account for the installation of the sprinkler system.  PSAMF ¶ 34; DRPSAMF ¶ 34.  Joca-Roca demanded indemnification from Mr. Brennan for the cost of installing an automatic sprinkler system.  PSAMF ¶ 22; DRPSAMF ¶ 22.  Mr. Brennan refused to indemnify Joca-Roca.  PSAMF ¶ 23; DRPSAMF ¶ 23.

## II.   THE PARTIES' POSITIONS

### A.   The Knowledge Element of Joca-Roca's Fraud Claim[15]

#### 1.   Robert Brennan's Motion

Mr. Brennan's motion is premised on two arguments: (1) the summary judgment record does not establish fraud because there is insufficient evidence that

---

[15]   In his motion, Mr. Brennan recited the five elements of a fraud claim under Maine law, and stated that "the third element is missing in this case."  *Def.'s Mot.* at 3.  The third element is whether the party made a false representation "with knowledge of its falsity or in reckless disregard of whether it is true or false."  *Id.* (quoting *Guiggey v. Bombardier*, 615 A.2d 1169, 1173 (Me. 1992)).  The Court has not addressed the other four elements of fraud because they have not been raised in this motion.

10

he either was actually aware of a sprinkler requirement or that he recklessly disregarded whether the Main Facility should have had sprinklers when he made representations and warranties about the property as part of the sale to Joca-Roca; and, (2) Joca-Roca's claim for breach of contract is time-barred and is not revived by tolling the limitation period. *Def.'s Mot.* at 3-9.

Mr. Brennan first addresses Joca-Roca's fraud claim, arguing that Joca-Roca has failed to submit sufficient evidence to show that he knew the Main Facility should have had sprinklers. *Id.* at 3-4. In Mr. Brennan's view, that he specifically discussed sprinklers with the town of Lebanon's fire chief and the fire chief was unaware of any sprinkler requirement make it "hard to argue" that he either knew or was in reckless disregard as to whether the building should have had sprinklers. *Id.* at 4.

Next, Mr. Brennan contends that the Certificate issued in 2006 with the limiting "metal storage building" condition was not intended to limit the use of the Main Facility as there was no zoning provision in Lebanon that would have applied to limit the use, that the issuance of the Certificate had nothing to do with the Main Facility's compliance with state fire code regulations or sprinkler requirements, and that the fact that the building was used as a showroom and offices demonstrates that the Certificate was not limiting the building's use to storage only. *Id.* at 4-5.

Finally, Mr. Brennan submits that the land use opinion issued to TD Bank about a month after the closing demonstrates that Joca-Roca's own counsel did not consider the Main Facility to be in violation of any sprinkler requirement. *Id.* at 5.

### 2.   Joca-Roca's Opposition

11

Joca-Roca contends that it has generated a trialworthy issue regarding Mr. Brennan's knowledge because it has presented sufficient evidence from which a factfinder could conclude that Mr. Brennan knowingly or with reckless disregard for the truth made false representations that the Main Facility was properly permitted. *Pl.'s Opp'n* at 8.  Joca-Roca says it is undisputed that sprinklers were required for the Main Facility when it was constructed in 2003,[16] and that Mr. Brennan represented and warranted in the Agreement that the building had all necessary federal, state, and local licenses, permits and approvals for use and operating the Main Facility as a dealership.  *Id.* at 4.  However, Joca-Roca asserts that the Main Facility did not have proper approval from the state fire marshal's office and therefore did not conform to state fire code requirements for operating as a dealership showroom, and Mr. Brennan's representation to the contrary was false.  *Id.* at 4-5.  Furthermore, Joca-Roca submits that Mr. Brennan's knowledge of the falsity of the representation can be inferred because: (1) Chief Wood directed Mr. Brennan to consult with the state fire marshal; and (2) Mr. Brennan filled out a construction permit application to be filed with the state fire marshal's office, but there is no evidence that he actually submitted that application.  *Id.* at 5.  Joca-Roca contends that Mr. Brennan "turned a blind eye" as to whether he needed approval from the state fire marshal's office, and that this was "consistent with his behavior with regards to other permits for this property."  *Id.* at 6.

---

[16]     In support of its assertion, Joca-Roca cites the National Fire Protection Association Standard # 101, Life Safety Code, 2000 edition, which it says applied to all new buildings in Maine under 16-219 C.M.R. ch. 20, § 1 (2003).

Next, Joca-Roca argues that the Certificate is significant because the occupancy classification of a building dictates whether automatic sprinklers are required under state law. *Id*. Joca-Roca says that whether the CEO intended to limit the use of the facility or make a determination regarding compliance with fire codes does not impact the Certificate's weight in this case. *Id*. Joca-Roca submits that Mr. Brennan knew that the facility's use as a dealership showroom was inconsistent with its classification on the Certificate, which permits an inference that when he procured the Certificate – after the closing – he knew that his representations in the Agreement were either false or that he acted with reckless disregard as to their truth. *Id*. at 6-7.

Finally, Joca-Roca claims the land use opinion letter is immaterial to the fraud claim because Mr. Hark expressly limited his opinion to compliance with town ordinances, town building permit and variance records, and certain DEP records. *Id*. at 7. Joca-Roca maintains that Mr. Hark did not even consider fire code compliance. *Id*.

### 3. Robert Brennan's Reply

Mr. Brennan insists that Joca-Roca's fraud claim rests upon "nothing more than conjecture." *Def.'s Reply* at 2. He claims that the construction permit application upon which Joca-Roca relies was submitted for a boat storage facility that is not the Main Facility. *Id*. at 3. With respect to Joca-Roca's arguments regarding the application to the state fire marshal's office for the boat storage building, Mr. Brennan contends that his knowledge that the boat storage building did not require

13

sprinklers has no bearing on whether he knew that the Main Facility needed sprinklers. *Id.* He instead relies on his conversations with Chief Wood, which he says show what he knew when he was constructing the Main Facility. *Id.* at 4. Chief Wood never told him he had to check with the state regarding sprinklers, Mr. Brennan asserts, so if the fire chief did not think the Main Facility needed sprinklers, it is unreasonable to think Mr. Brennan knew or recklessly disregarded whether the building needed sprinklers. *Id.* Mr. Brennan admits that he did not check with the state fire marshal's office after the building was constructed to make sure he was in compliance, but argues that Joca-Roca did not either. *Id.* If Joca-Roca's actions were reasonable, he contends, so were his. *Id.*

Next, Mr. Brennan responds to Joca-Roca's argument that his behavior toward the fire code requirements was consistent with his approach to other permits for the property. *Id.* at 5. Mr. Brennan, assuming that Joca-Roca's statement referred to a public water supply application pending at the time the Agreement was signed but was approved before the closing, asserts that rather than creating an inference of fraud, his behavior demonstrates that he was ensuring the Main Facility had no missing permits or approvals before he sold it to Joca-Roca. *Id.*

Mr. Brennan restates his contention that the occupancy of the Main Facility for the purposes of state fire code requirements has nothing to do with the issuance of the Certificate, and says that the land use opinion letter demonstrates that Joca-Roca's own counsel was aware that the Certificate was missing but was also unaware of the importance of checking with the state fire marshal's office. *Id.*

14

### B.    Breach of Contract Claim

#### 1.    Mr. Brennan's Motion

Mr. Brennan contends that Joca-Roca's breach of contract claim is time-barred and not subject to any tolling of the limitation period.  *Def.'s Mot.* at 6.  He first addresses Joca-Roca's claim based on breach of the warranties and representations in the Agreement, contending that Joca-Roca's cause of action accrued on the date of the closing.  *Id.* at 6-7.  Next, Mr. Brennan asserts that over six years have passed since the claim accrued, and it is therefore time-barred.  *Id.* at 7.  Mr. Brennan then turns to the alleged breach of the contractual indemnity provision in the Agreement, arguing that Joca-Roca's claim for indemnification is a claim for direct injury not related to any third-party liability, and is also time-barred.  *Id.* at 8-9.

Mr. Brennan argues that because Joca-Roca has not alleged fraudulent concealment, no tolling provision applies to the breach of contract claim.  *Id.* at 9.  He contends that because Joca-Roca did not allege that he fraudulently concealed any breach of the representations or warranties, and as there is no evidence of any fraudulent concealment in connection with the damages Joca-Roca is pursuing, the tolling provision under the Maine statute does not apply.  *Id.*

#### 2.    Joca-Roca's Opposition

Joca-Roca maintains that its breach of contract claim is not time-barred because it is based upon Mr. Brennan's refusal to indemnify Joca-Roca under the Agreement after it was forced by the state fire marshal to update the Main Facility with a sprinkler system in 2013.  *Pl.'s Opp'n* at 8-9.  Next, Joca-Roca rejects the

distinction Mr. Brennan draws between direct injury and third-party claims, arguing that Maine law does not limit indemnification claims to circumstances involving third party claims. *Id*. at 9. Further, Joca-Roca contends, the plain language of the Agreement provides that Mr. Brennan agreed to indemnify Profile Superstore and Joca-Roca for any breach of any representation or warranty, whether or not involving a third-party claim. *Id*. at 10. Finally, Joca-Roca asserts, third-party liability is present because Joca-Roca's tenant, Profile Superstore, is the party actually incurring the costs of the sprinkler installation. *Id*. at 11.

### 3.   Mr. Brennan's Reply

Mr. Brennan distills his argument, stating that Joca-Roca's claim for direct indemnification is time-barred because the underlying claim upon which it is based – breach of the Agreement's representations and warranties – is time-barred. *Def.'s Reply* at 5. He concedes that if this was a third-party claim then the statute of limitations would not have run but contends that because this case does not involve a third-party indemnification claim, the cause of action arose the day after the closing. *Id*. at 6-7.

Next, Mr. Brennan responds to Joca-Roca's "late hour" argument that its damages are the result of rent abatement to its tenant Profile Superstore. *Id*. at 7. Mr. Brennan asserts that Joca-Roca has no liability to Profile Superstore because, at the time of the closing, Joca-Roca and Profile entered into a written lease in which Joca-Roca unequivocally exclaimed the express or implied warranties of habitability, merchantability, or fitness for any particular purpose or otherwise. *Id*. at 8. Joca-

16

Roca's decision to provide rent credit to Profile Superstore, was, according to Mr. Brennan, entirely voluntary. He submits that any party who voluntarily makes a payment has no right to seek indemnification for a loss it was not obligated to pay in the first instance. *Id.*

## III.   DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if "its existence or nonexistence has the potential to change the outcome of the suit." *Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011) (quoting *Borges ex rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 5 (1st Cir. 2010)). A dispute is "genuine" if "a reasonable jury could resolve the point in favor of the nonmoving party." *Id.* (quoting *McCarthy v. Nw. Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995)).

"If the moving party has made a preliminary showing that there is no genuine issue of material fact, the nonmovant must 'produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue.'" *McCarthy v. City of Newburyport*, 252 Fed. Appx. 328, 332 (1st Cir. 2007) (quoting *Triangle Trading Co., Inc. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (internal punctuation omitted)). In other words, the non-moving party must "present 'enough competent evidence' to enable a factfinder to decide in its favor on the disputed claims." *Carroll*

17

*v. Xerox Corp.*, 294 F.3d 231, 237 (1st Cir. 2002) (quoting *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir. 1993)).

The Court then "views the facts and draws all reasonable inferences in favor of the nonmoving party." *Ophthalmic Surgeons, Ltd. v. Paychex, Inc.*, 632 F.3d 31, 35 (1st Cir. 2011). However, the Court "afford[s] no evidentiary weight to 'conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative.'" *Tropigas*, 637 F.3d at 56 (quoting *Rogan v. City of Boston*, 267 F.3d 24, 27 (1st Cir. 2001)); *accord Sutliffe v. Epping Sch. Dist.*, 584 F.3d 314, 325 (1st Cir. 2009).

The Supreme Court has stated that "the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, a movant for summary judgment bears the burden to "demonstrate that there is 'an absence of evidence to support the nonmoving party's case.'" *Napier v. F/V Deesie, Inc.*, 454 F.3d 61, 66 (1st Cir. 2006) (quoting *Celotex Corp.*, 477 U.S. at 325).[17]

## B.     The Fraud Claim[18]

To sustain an intentional fraud claim under Maine law, a plaintiff must show by clear and convincing evidence: "(1) that the defendant made a false representation,

---

[17]     The parties have assumed that Maine law applies. The Court agrees. The Agreement provides that it shall be interpreted according to the laws of the state of Maine. *Agreement* § 19(I). Maine courts will generally enforce a contractual choice of law provision. *Schroeder v. Rynel, Ltd.*, 1998 ME 259, ¶ 8, 720 A.2d 1164 (quoting RESTATEMENT (SECOND) CONFLICTS OF LAWS § 187(2) (1971)).
[18]     Mr. Brennan did not raise a statute of limitations defense to Joca-Roca's fraud claim.

(2) of a material fact, (3) with knowledge of its falsity or in reckless disregard of whether it is true or false, (4) for the purpose of inducing the plaintiff to act in reliance upon it, and, (5) the plaintiff justifiably relied upon the representation as true and acted upon it to the plaintiff's damage."[19] *Rand v. Bath Iron Works Corp.*, 2003 ME 122, ¶ 9, 832 A.2d 771 (citing *Mariello v. Giguere*, 667 A.2d 588, 590 (Me. 1995)). "A claim for fraud must be proved by evidence that shows that the existence of fraud is 'highly probable.'" *Francis v. Stinson*, 2000 ME 173, ¶ 39, 760 A.2d 209 (quoting *Barnes v. Zappia*, 658 A.2d 1086, 1089 (Me. 1995)). The Court may infer knowledge of falsity based on the record evidence. *See Glynn v. Atlantic Seaboard Corp.*, 1999 ME 53, ¶ 13, 728 A.2d 117.

In the Agreement, Mr. Brennan expressly represented that the Main Facility had all necessary licenses, permits, and approvals for use as a dealership. In relevant part, the Agreement states:

> 7. Wholesale and Brennan, separately and jointly, represent and warrant to Profile and Joca-Roca, as of the date hereof and as of the Closing:
>
> . . . .

---

[19] Joca-Roca argues that it is beyond dispute that the building, used as a retail showroom, required an automatic sprinkler system when it was built in 2003. *Pl.'s Opp'n* at 4. As authority, Joca-Roca cites the National Fire Protection Association Standard #101, Life Safety Code, which has been adopted in the Code of Maine Rules, 16-219 C.M.R. ch. 20., § 1. *Id.* Joca-Roca asserts that the application of the Life Safety Code depends on the occupancy of a building, and that the Main Facility, used as a showroom, required automatic sprinkler systems under the Life Safety Code. *Id.* This evidence is more appropriately directed at the first element of Joca-Roca's fraud claim that Mr. Brennan made a false statement – that is, he represented that the Main Facility was properly licensed and permitted when in fact it was not. Because Mr. Brennan focused his motion on the third element of fraud – knowledge – and did not dispute in his reply that the building required sprinklers when it was constructed, the Court does not determine the application of the 2003 version of the Life Safety Code – which Joca-Roca has not provided – to the Main Facility. The Court has assumed for the purposes of summary judgment that the Main Facility required an automatic sprinkler system when constructed.

(E)  The Purchased Property and current use thereof as a dealership of new and used recreational vehicles, boats, used vehicles, and related accessories and supplies is in full compliance with applicable building codes, zoning, and land use laws and all other applicable laws, ordinances, and regulations. . . .

. . . .

(G) The Business has all necessary federal, state and local licenses, permits and approvals for the use and operating of the Purchased Property as a dealership of new and used recreational vehicles, boats, used vehicles, and related accessories and supplies.

*Agreement* at § 7(E), (G).  In support of its contention that Mr. Brennan knew the representations contained in the Agreement were false or that Mr. Brennan acted in reckless disregard as to their truth or falsity, Joca-Roca has presented evidence that: (1) Chief Wood directed Mr. Brennan to consult with the state fire marshal regarding the necessity of sprinklers; (2) Mr. Brennan completed a state fire marshal's office application for a construction permit for a boat storage building, dated September 15, 2003; and (3) the Certificate, dated February 13, 2006, obtained approval for an occupancy for a "metal storage building" that would not require a sprinkler system under state fire code regulations. Mr. Brennan contends that this evidence is insufficient to survive summary judgment, and that he has presented evidence that Chief Wood never told him he had to check with the state fire marshal about sprinklers.[20]

---

[20]   Mr. Brennan also contends that Joca-Roca did not check with the state fire marshal as to whether the Main Facility complied with the fire code when it bought the building.  *Def.'s Reply* at 4. He cites no statement of fact for this assertion.   Furthermore, Joca-Roca's investigation of Mr. Brennan's representations goes toward the reasonableness of Joca-Roca's reliance, not Mr. Brennan's knowledge.  Reliance is not the subject of the parties' dispute or this Order.

Viewing the evidence in the light most favorable to Joca-Roca, Mr. Brennan knew in or around 2003 that he should consult with the state fire marshal about whether the building needed a sprinkler system because he was told so by Chief Wood.  Furthermore, Mr. Brennan completed (or directed an employee on how to complete) a permit application seeking approval from the state fire marshal for the construction of a boat storage building.  His contention that knowledge that the boat storage building did not need sprinklers has no bearing on his knowledge that the Main Facility needed sprinklers is a fallacy.[21]  Additionally, a jury could infer that by classifying the Main Facility as a "metal storage building" on the Certificate, Mr. Brennan was seeking to avoid raising any issues with sprinkler requirements and state fire code regulations.  Knowledge or reckless disregard as to the truth presents an issue of fact, and the record here contains facts that, if viewed in the light most favorable to Joca-Roca, suggest that even if he did not know the Main Facility needed sprinklers, he knew that he should check with the fire marshal regarding the application of the fire code to the Main Facility as it was being used.

Even if he did not actually know that the building required sprinklers or that he needed to get approval from the fire marshal, Mr. Brennan himself highlighted the evidence demonstrating that he acted in reckless disregard as to the truth of the express representations he made in the Agreement.  In his reply, Mr. Brennan conceded that he "didn't go checking with the State Fire Marshal's office after the

---

[21]    Even if, as Mr. Brennan contends, the application was for a building permit other than for the Main Facility, the fact that he completed a permit is relevant to show whether he knew he should seek approval from the state fire marshal when constructing a new building.

21

building was already constructed to make sure he was in compliance" because an "owner does not normally go running around doing follow-up checks with government officials to look for problems." *Def.'s Reply* at 4.  This argument is problematic for two reasons.

First, Mr. Brennan's position contradicts other evidence – viewed in the light most favorable to Joca-Roca – establishing that he was indeed "running around" to secure other missing permits for the building; Mr. Brennan finalized the public water supply application after entering into the Agreement.

Second, a jury could conclude based on the facts in the record – viewed in the light most favorable to Joca-Roca – that Mr. Brennan, in preparation for a sale in which he expressly warranted that the property was in compliance with applicable government regulations, would either check with government officials to make sure he could legally stand behind his statements, or in the alternative avoid making express representations and merely sell the building "as is."  Moreover, a factfinder could conclude that he should have known – after completing a construction permit application for the state fire marshal around the same time – that he needed to apply to the state fire marshal for a construction permit for the Main Facility. Consequently, a jury could find that he should have known that his statements in the Agreement were misrepresentations.   From this evidence, a factfinder could reasonably infer that the representations contained in the Agreement were at least made in reckless disregard of their truth or falsity.

22

The Court concludes that the summary judgment record presents a triable issue as to whether Mr. Brennan provided Joca-Roca with information – concerning whether the Main Facility had all necessary federal, state, and local licenses, permits and approvals – that he either knew was false or acted in reckless disregard as to its truth or falsity.  The Court is unable to conclude, based on this record, as a matter of law that Mr. Brennan did not know the representations in the Agreement were false, or that he did not act in reckless disregard as to the truth of the statements.  Whether Joca-Roca justifiably relied on the false statement – in light of its own attorney's review of the transaction and other factors, such as the obviousness of whether a building has a sprinkler system – is a matter Mr. Brennan has not argued in this motion. On the narrow issue of whether Joca-Roca has generated a genuine dispute of material fact on the third element of its fraud claim in Count I, the Court denies Mr. Brennan's motion for summary judgment.

###   C.   The Breach of Contract Claim

####   1.   Accrual of the Cause of Action

Mr. Brennan moves the Court for summary judgment on Joca-Roca's breach of contract claim, asserting that it is time-barred by the applicable statute of limitations.  *See* 14 M.R.S. § 752 ("All civil actions shall be commenced within 6 years after the cause of action accrues and not afterwards").[22]   The Law Court has interpreted section 752 to mean that "all civil actions, including equitable claims,

---

[22]      Joca-Roca does not dispute that the limitation provisions of section 752 apply to its claim against Mr. Brennan.  Claims for breach of contract are generally subject to the six-year limitation period. *See Gile v. Albert*, 2008 ME 58, ¶ 8, 943 A.2d 599.

must be commenced within six years after the cause of action accrues, unless another more particularized statute applies." *U.S. Bank Nat. Ass'n. v. Adams*, 2014 ME 113, ¶ 4, 102 A.3d 774.

It is well-settled that, under Maine law, "[t]he accrual of a cause of action occurs at the time the plaintiff sustains a judicially cognizable injury," which in breach of contract claims is usually set "when the contract was breached." *Chiapetta v. Clark Assocs.*, 521 A.2d 697, 699 (Me. 1987); *see also Gile*, 2008 ME 58, ¶ 8, 943 A.2d 599 ("In a breach of contract claim, that date occurs when the defendant breaches the contract"); *Dugan v. Martel*, 588 A.2d 744, 746 (Me. 1991) ("In general, the accrual of a cause of action occurs at the time a judicially cognizable injury is sustained"); *Burke v. Hamilton Beach Div., Scovill Mfg. Co.*, 424 A.2d 145, 149 (Me. 1981) ("In contract actions a cause of action accrues at the time of breach"), vacated on other grounds by *Adams v. Buffalo Forge Co.*, 443 A.2d 932 (Me. 1982). Joca-Roca's principal argument is that its cause of action did not accrue until 2013, when it was made aware by the state fire marshal that the Main Facility did not comply with state fire code. In contrast, Mr. Brennan argues that the claim accrued when the Agreement was signed because that was the moment when Joca-Roca suffered a judicially cognizable injury.

The law is clear. At the latest, Joca-Roca's breach of contract claim accrued and triggered the six-year statute of limitations at the closing in December 2005 or when Joca-Roca took possession of the Main Facility, presumably shortly after the closing. In other words, if Joca-Roca had discovered on or after the closing on

24

December 8, 2005 that the Main Building did not have a sprinkler system and that the state fire marshal required such a system, Joca-Roca could have filed suit then based on a breach of contract.  However, Joca-Roca did not file its Complaint until March 4, 2013, more than six years later.  Thus, the action is time-barred unless an exception or more particularized statute applies.

### 2.   The Impact of the Indemnification Provision

Joca-Roca appears to concede that its claim is not timely insofar as it is based on a breach of the warranty provision but insists that Mr. Brennan breached the indemnification provision in 2013 and effectively restarted the limitation period.  *See Pl.'s Opp'n* at 8 n.1 ("Joca-Roca asserts a breach of contract claim for Brennan's failure to indemnify Joca-Roca under the [Agreement], not, as Brennan suggests, merely a breach of the representations and warranties").  The parties make much of whether the indemnification provision in the Agreement may serve as a separate breach event for the purposes of Joca-Roca's breach of contract claim.  In this case, it may not.

First, under the plain language of the Agreement, Mr. Brennan is obligated to indemnify Joca-Roca for damages stemming from a breach of the Agreement in only three scenarios:

> Brennan . . . will indemnify . . . Joca-Roca . . . for . . . any loss, liability, claim, damage . . . , expense . . . , whether or not involving a third-party claim . . . , arising, directly or indirectly, from or in connection with: (1) any Breach of any representation or warranty made by . . . Brennan in this Agreement (without giving effect to any supplement to the disclosures), the disclosures, the supplements to the disclosures, or any other certificate or document delivered by . . . Brennan pursuant to this Agreement; (2) Any breach of any representation or warranty made by .

25

. . Brennan in this Agreement as if such representation or warranty were made on and as of the Closing Date . . . ; or (3) Any [b]reach by . . . Brennan of any covenant or obligation of such Seller in this Agreement.

*Agreement* § 14(B).[23]

For Mr. Brennan to be obligated to indemnify Joca-Roca under the explicit terms of the Agreement, he must first have breached a representation or warranty contained in the Agreement.[24] Joca-Roca cites no controlling statute or caselaw for its proposition that Mr. Brennan's refusal to indemnify constituted a new breach of the contract.[25] A breach of the indemnification provision requires a preceding breach

---

[23]     The parties stipulated that the Asset Purchase Agreement attached as Exhibit A to the Complaint is a correct copy of the Agreement. SSMF ¶ 3. The Court has considered its terms in ruling on the pending motion.
         The Court interprets "unambiguous contract language according to its plain and commonly accepted meaning." *Seashore Performing Arts Ctr., Inc. v. Town of Old Orchard Beach*, 676 A.2d 482, 486 (Me. 1996).

[24]     The parties argue about whether the presence or lack of third-party liability tilts the scales in their favor. But there is no third-party plaintiff in this case and Joca-Roca did not allege the presence of any third-party to the claim in its Complaint. Joca-Roca has cited no cases where a third-party not named as a party or alleged in a complaint to have suffered damages may be considered to be a third-party whose indemnification claim may toll the accrual of the applicable statute of limitations.

[25]     In support of its argument that its claim did not accrue until 2013, Joca-Roca relies on language in *Howard & Bowie, P.A. v. Collins*, 2000 ME 148, 759 A.2d 707. In *Howard & Bowie*, the Law Court stated "[t]here must be proof of damage actually suffered . . . to enable one to maintain an action upon a contract of indemnity." *Id.* ¶ 21. However, that case involved a claim in quantum meruit where one counsel succeeded another in working on a client's case, and also involved an assignment to a third party of rights to be indemnified. The *Howard & Bowie* Court did not discuss the impact of the statute of limitations applicable to the claim.
         Furthermore, to the extent that Joca-Roca cites other cases in support of its argument regarding accrual of its breach of contract claim, each is distinguishable. *Peerless* did not involve a breach of contract claim, did not discuss timing of accrual of a cause of action, or the tolling of a statute of limitations. *See Peerless Div., Lear Siegler, Inc. v. U.S. Special Hydraulic Cylinders, Corp.*, 1999 ME 189, 742 A.2d 906. *Cyr v. Michaud* likewise did not involve a claim of indemnification pursuant to a breach of contract. *See Cyr v. Michaud*, 454 A.2d 1376, 1385 (Me. 1983).
         Joca-Roca is correct when it says that Maine law does not limit indemnification claims to circumstances involving third parties, but it fails to show how an indemnification request based on a contractual indemnification provision serves as the date for which a breach of contract claim accrues.
         Finally, in its reply, Joca-Roca states that because Joca-Roca's tenant Profile Superstore paid for the sprinkler system in the Main Facility, third-party liability is present in this case because Joca-Roca is "having to pay for those expenses in the form of a rent credit to its tenant." *See Pl.'s Opp'n* at 11. Other than its own say-so, Joca-Roca offers no authority for its contention. The Court considers this undeveloped proposition waived.

of the Agreement and in the Court's view, the first breach starts the statute of limitations clock. *Dunelawn Owners' Ass'n v. Gendreau*, 2000 ME 94, ¶ 11, 750 A.2d 591 ("[A] contract cause of action accrues at the time of the breach").

Otherwise, a contracting party could bide its time, wait until memories have faded, documents have been lost or destroyed, and witnesses have become unavailable, and then demand indemnification, restarting the six year statute of limitations, a result that undercuts the salutary purposes of the statute of limitations. *See Nuccio v. Nuccio*, 673 A.2d 1331, 1334 (Me. 1996) (quoting *Duddy v. McDonald*, 148 Me. 535, 538, 97 A.2d 445 (1953) ("Statutes of limitations are statutes of repose and . . . should be construed strictly in favor of the bar which it was intended to create and not liberally in favor of a promise, acknowledgement or waiver").

Additionally, the only date referenced in the indemnification section of the Agreement is the closing date; the Agreement states that Mr. Brennan will indemnify Joca-Roca for any breach of any representation or warranty "as if such representation or warranty were made on and as of the Closing Date." *Agreement* § 14(B). The parties' contract language supports the conclusion that the closing, not a later demand for payment based on representations made at the closing, served as a triggering event for claim accrual purposes.[26]

---

[26]     The parties spar over the import of a 2005 Delaware case, *CertainTeed Corp. v. Celotex Corp.*, 2005 WL 217032 (Del. Ch. Jan. 24, 2005). *See Def.'s Mot.* at 7-9; *Pl.'s Opp'n* at 10.  That case involved a dispute over a contractual indemnification provision in an asset purchase agreement, under which the seller made numerous representations concerning the validity of various permits required for operations at the purchased facilities and promised the buyer indemnification if certain losses occurred after the closing date.  *CertainTeed*, 2005 WL 217032, at *1-2.  The seller argued that the buyer's claims were barred by laches because indemnification claims accrue at the time of closing.  *Id.* at *1. The court ruled in favor of the seller, distinguishing the disputed contractual indemnification claim – a "direct indemnification" claim – from common law indemnification claims that typically involve third

Moreover, to give effect to Joca-Roca's theory would frustrate the Maine Legislature's purpose in enacting the six-year limitation period generally applicable to breach of contract claims. "Statutes of limitation are strictly construed. Their purpose is to provide eventual repose for potential defendants and to avoid the necessity of defending stale claims." *Dowling v. Salewski*, 2007 ME 78, ¶ 11, 926 A.2d 193 (internal citations and punctuation omitted). If the Court accepted Joca-Roca's proposition, a cause of action for breach would accrue anew each time Joca-Roca demanded payment from Mr. Brennan for costs stemming from alleged breaches of the parties' contract. Again, this would undercut the salutary purposes of the statute of limitations. *See Nuccio*, 673 A.2d at 1334. The seller in a transaction with an indemnification provision would remain uncertain whether time had extinguished potential liability.

---

parties. *Id*. at *3. The court held that the "indemnification" provided for in the asset purchase agreement was a "contractual term of art" designed to describe a remedy between the two parties, whereas common law indemnification involved a third party's responsibility to pay for another's liability. *Id*. Furthermore, the court noted, the asset purchase agreement contained a separate provision for third-party claims. *Id*. The court ultimately determined that even though the plaintiff's argument was "wholly strained," its claim survived summary judgment because it explicitly argued that the non-compliant conditions were inherently undiscoverable and, under Delaware law, the "low threshold for the use of the doctrine of inherently unknowable injury" permitted the claim to survive the defendant's motion to dismiss. *Id*. at *9.

Neither party cited Maine caselaw that discusses the distinction between direct and third-party indemnification claims for the purposes of analyzing the accrual of a breach of contract cause of action, nor could the Court find any. The Court finds the reasoning in the Delaware Chancery Court's opinion helpful, and it supports the Court's conclusion in this case that Joca-Roca's claim accrued at the date of closing and was not tolled. However, the opinion is not controlling here, was issued at the motion to dismiss stage, and relied on an interpretation of the doctrine of inherently unknowable injury, a feature of Delaware state law neither party addressed in their briefs.

Joca-Roca attacks the usefulness of *CertainTeed* on the basis that a subsequent district court case in Delaware rejected *CertainTeed*. *See Pl.'s Opp'n* at 10. That case, *JFE Steel Corp. v. ICI Americas, Inc.*, 797 F. Supp. 2d 452 (D. Del. 2011), does not deal the fatal blow that Joca-Roca contends it does. Significantly, *JFE Steel* involved a third-party indemnification claim, and the court determined that the defendant breached the contract when it refused to compensate the plaintiff for payments to a third party. *See JFE Steel Corp*. at 456-457, 470.

The Court concludes that Joca-Roca has failed to generate a genuine issue of material fact concerning the date the contract was breached. Joca-Roca's breach of contract claim accrued in 2005, not in 2013 when Mr. Brennan refused its indemnification request. Accordingly, the Court concludes that the claim is time-barred and grants Mr. Brennan's motion for summary judgment on Count II.

### 3.    The Impact of Joca-Roca's Fraud Claim

"Maine common law has long recognized that fraud can toll a statute of limitation." *Rared Manchester NH LLC v. Rite Aid of New Hampshire, Inc.*, 2011 WL 4005304, at *12 (D. Me. Sept. 6, 2011) (citing *Choroszy v. Tso*, 647 A.2d 803, 807 (Me. 1994)). Having concluded that the six-year limitation period set out in section 752 governs Joca-Roca's breach of contract claim, the Court explores whether another, more particularized, statutory tolling provision applies. *See U.S. Bank Nat. Ass'n. v. Adams*, 2014 ME 113, ¶ 4, 102 A.3d 774. Joca-Roca has cited no such statute in either its Complaint or its opposition to the current motion.[27]   However, it alleged fraud against Mr. Brennan, which the Court finds sufficient to address the applicability of a statutory provision that tolls the limitation period in cases involving fraud. *See Bangor Water Dist. v. Malcolm Pirnie Eng'rs*, 534 A.2d 1326, 1328 (Me. 1988) (the plaintiff alleged fraud against the defendant, "thereby implicating section 859"). The statute provides:

> [i]f a person, liable to any action mentioned, fraudulently conceals the
> cause thereof from the person entitled thereto, or if a fraud is committed

---

[27]    Mr. Brennan urges the Court to grant summary judgment on the breach of contract claim because Joca-Roca did not allege fraudulent concealment. *Def.'s Mot.* at 9. However, the plain language of the statute does not limit its scope to cases alleging fraudulent concealment, and Mr. Brennan cites no authority to support his position.

which entitles any person to an action, the action may be commenced at any time within 6 years after the person entitled thereto discovers that he has just cause of action, except as provided in section 3580.

14 M.R.S § 859.[28]   Maine courts have applied section 859 to toll the statute of limitations on two bases.  "The first involves the fraudulent concealment from the plaintiff of the existence of a cause of action.  The second concerns the situation in which the claim is itself grounded upon fraud." *Westman v. Armitage*, 215 A.2d 919, 922 (Me. 1966).  "In either case, the statute starts to run when the existence of the cause of action is discovered or should have been discovered by the plaintiff in the exercise of due diligence and ordinary prudence." [29]  *Id.*

The Law Court articulated the following standard for demonstrating fraudulent concealment:

> [i]n order to prevail in a claim that a cause of action has been fraudulently concealed, a [plaintiff] . . . 'must establish both a concealment and a fraudulent intent or design to prevent discovery of facts giving rise to its cause of action.  Furthermore, it must show that the defendant had actual knowledge of a fact before the defendant can be charged with an intent or design to conceal it from the plaintiff.'

*Bangor Water Dist.*, 534 A.2d at 1329 (quoting *Alexander v. Gerald E. Morrissey, Inc.*, 399 A.2d 503, 506 (Vt. 1979)).  Here, Joca-Roca has not demonstrated that Mr. Brennan had actual knowledge that his representation in the Agreement was false. If Joca-Roca could show as much, then the Court assumes it would have done so in

---

[28]     Section 3580 deals with fraudulent transfers not at issue in this action.  *See* 14 M.R.S. § 3580.
[29]     The Maine Supreme Judicial Court has written that "[w]hether a party has exercised due diligence as required to toll the statute of limitations in cases of fraud is ordinarily considered to be a question of fact."  *Kobritz v. Severance*, 2007 ME 3, ¶ 16, 912 A.2d 1237.  Presumably for good reason, Joca-Roca has not claimed that in the exercise of due diligence it could not have discovered the absence of the sprinkler system within the six-years following the closing.  In any event, Joca-Roca has not argued this issue and the Court has not considered it.

its arguments regarding the knowledge element of its fraud claim. Instead, it merely argued that Mr. Brennen's knowledge of the falsity "can be inferred from the context." *Pl.'s Opp'n* at 5. Joca-Roca has failed to put forth sufficient evidence of actual knowledge to satisfy the requirements of section 859 and, even if it could so demonstrate, the summary judgment record is devoid of any mention of concealment or an intent or design to prevent discovery of facts giving rise to Joca-Roca's cause of action. Finally, Joca-Roca has failed to demonstrate that it could not have discovered the existence of its cause of action through due diligence or ordinary prudence before the expiration of the limitation period.

Even viewing the evidence in the light most favorable to Joca-Roca, there is no triable issue on the statute of limitations question because there is not enough evidence for a jury to return a verdict for the nonmoving party. The record contains no evidence showing there is a triable issue as to fraudulent concealment, and Joca-Roca has made no argument that the non-compliant conditions at the Main Facility were inherently unknowable or undiscoverable, which given the presumed discoverability of the existence or absence of a sprinkler system seems wise. The Court concludes that this case presents no exception to the general rule that "mere ignorance of a cause of action does not prevent the statute of limitations from running," *Dugan v. Martel*, 588 A.2d. 744, 746 (Me. 1991), and grants Mr. Brennan's motion for summary judgment as to Count II of the Complaint.

## IV.   CONCLUSION

The Court DENIES Mr. Brennan's motion for summary judgment on Count I, and GRANTS his motion for summary judgment on Count II (ECF No. 71).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 6th day of November, 2015